# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Margaret R. Chytracek,                                   Civil No. 12-1395 (MJD/SER)

       Plaintiff,

v.                                                       **<u>REPORT AND RECOMMENDATION</u>**

Carolyn W. Colvin,
Acting Commissioner of Social Security,[1]

       Defendant.

---

     Neut L. Strandemo, Esq., 320 Eagandale Office Center, 1380 Corporate Center Curve, Eagan, MN 55121, on behalf of Plaintiff.

     Gregory G. Brooker, Esq., Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, on behalf of Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

     Pursuant to 42 U.S.C. § 405(g), Plaintiff Margaret R. Chytracek ("Chytracek") seeks review of the denial of her application for social security disability insurance ("SSDI"). This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and the District of Minnesota Local Rule 72.1. The parties filed cross-motions for summary judgment [Doc. Nos. 6 and 9]. For the reasons set forth below, the Court recommends Chytracek's motion for summary judgment be denied, and the Commissioner's motion be granted.

## I.    BACKGROUND

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. http://www.ssa.gov/pressoffice/factsheets/colvin.htm

## A. Procedural History

Chytracek filed an application for SSDI on July 16, 2007, alleging a disability onset date of October 1, 2002, but later amended the onset date to June 13, 2007. (Admin. R. at 187-91, 337-38) [Doc. No. 5]. She was last insured for SSDI on June 30, 2009. (*Id.* at 17.) Chytracek claimed disability due to bipolar disorder, depression, anxiety, neck, shoulder, arm, back and hip pain. (*Id.* at 235.) Initially, Chytracek's application was denied on September 17, 2007, and denied again on reconsideration. (*Id.* at 90-94, 98-100.) Chytracek requested a hearing. (*Id.* at. 105-06.) Administrative Law Judge ("ALJ") Jerome J. Berkowitz heard the matter on January 22, 2010, and issued an unfavorable decision on May 3, 2010.[2] (*Id.* at 54-63, 361.) The Appeals Council granted Chytracek's request for review of the ALJ's decision and remanded for further proceedings.[3] (*Id.* at 35.) A hearing was held before Administrative Law Judge Mary M. Kunz on November 21, 2011. (*Id.* at 33-52.) ALJ Kunz issued an unfavorable decision on December 9, 2011. (*Id.* at 12-32.) The Appeals Council denied Chytracek's request for review on April 13, 2012 which rendered the ALJ's decision final. (*Id.* at 1-11.) *See* 42 U.S.C. § 405(g); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). Chytracek now seeks review pursuant to 42 U.S.C. § 405(g).

## B. Chytracek's Background and Testimony

Chytracek was 52-years-old on her alleged onset date of June 13, 2007. (*Id.* at 37, 187.) Her alleged onset date is the day she became sober after decades of alcoholism and many chemical dependency treatment programs. (*Id.* at 1678, 1167-70.) Chytracek is 5'4" tall and weighs approximately 110 pounds. (*Id.* at 234.) She has a high school education, and past work experience as a cook in 2003-2004, and as a waitress/bartender from 1989-1996. (*Id.* at 236,

---

[2] ALJ Berkowitz's decision is not in the administrative record.
[3] The Appeals Council's remand order is not in the administrative record.

241.)  In September 2009, Chytracek began working part-time for Abicare, a home health services company.  (*Id.* at 37-38, 43-44.)  She does not believe she could physically or emotionally tolerate working more than fifteen hours per week.  (*Id.* at 38-39, 43-44.)  Her back pain prevents her from standing for more than an hour-and-a-half, and she is restricted to lifting ten pounds.  (*Id.* at 39.)

Chytracek has a long history of alcoholism, but she became sober after being treated with Abilify and an antidepressant for bipolar disorder.  (*Id.* at 45.)  Bipolar disorder affected her ability to work, especially when she was manic, causing her to have a short attention span and trouble focusing.  (*Id.*)  Chytracek fears she will lose her sobriety with the stress of full-time work.  (*Id.* at 45-46.)

During the relevant time period, Chytracek lived with her husband and teenage daughter.  (*Id.* at 41.)  She did most of the cooking for her family and the majority of the cleaning.  (*Id.* at 42.)  She grocery shopped with her husband.  (*Id.*)  She did not move furniture or do yard work because of her back injury.  (*Id.*)  She went to church twice a week and taught a class of four-year-olds on Wednesday nights.  (*Id.* at 43.)  Three nights a week, she went to revival meetings.  (*Id.*)  According to a function report she completed for the SSA on August 1, 2007, Chytracek went to mental health/chemical dependency classes in the mornings, walked, rode her bike or went to appointments in the afternoon, and did chores, watched television, read or sewed in the evenings.  (*Id.* at 253.)  She did not have difficulty getting along with people.  (*Id.* at 258-59.)

**C.    Medical Evidence**

Chytracek has had two back surgeries, the first was a lumbar microdiscectomy in 1997.  (*Id.* at 388-89.)  She improved and resumed her normal activities about ten days later.  (*Id.* at 621.)  Her second back surgery was a lumbar laminectomy in December 2002.  (*Id.* at 384-85.)

A month after surgery, she was doing much better. (*Id.* at 626.) Her surgeon, Dr. Rodney Peterson, recommended gradually increasing her walking and lifting but restricted heavy lifting, heavy bending and twisting. (*Id.*) On May 8, 2003, Chytracek saw Dr. Peterson for "some aching in her low back from time to time." (*Id.* at 623.) Dr. Peterson opined that Chytracek might have some back pain from time to time, but he doubted it would be severe and released her from his care with a recommendation for conservative treatment. (*Id.*) Chytracek next saw Dr. Peterson in February 2005 after she slipped and fell on her left hip, and he recommended treatment with exercise. (*Id.* at 630.)

On June 20, 2007, a week after her alleged onset date, Chytracek told her psychiatrist, Dr. Eduardo Trinidad, that her medications were not working, and she felt anxious with strong urges to drink. (*Id.* at 1589-90.) She complained of manic symptoms lasting one week, and she was taking more Seroquel than prescribed. (*Id.* at 1589.) Chytracek agreed to try Abilify.[4] (*Id.*) The next month, Chytracek said Abilify was working well for her. (*Id.* at 1585.) Her mood was happy, and she said Seroquel was effective for her anxiety. (*Id.*) She reported some difficulty focusing. (*Id.*) Chytracek then saw her primary care physician, Dr. William Ogden, for a three-month checkup on August 22, 2007. (*Id.* at 1678.) He diagnosed ankle edema, hypertension and alcoholism. (*Id.*)

In September 2007, Chytracek reported to Dr. Trinidad continued success with Abilify. (*Id.* at 1669.) She planned to start volunteering and looking for a job. (*Id.*) Chytracek's mental status reported her mood as relaxed. (*Id.*) Two months later, Dr. Ogden noted that Chytracek

---

[4] Abilify is a psychotropic drug indicated for treatment of schizophrenia. *Physician's Desk Reference* 1026-27 (Thomson PDR 59th ed. 2005). It is also widely prescribed for off label uses. Thomas Schwartz, M.D. and Shafi Raza, M.D., Aripiprazole (Abilify) and Tardive Dyskinesia, Pharmacy & Therapeutics 2008 Jan; 33(1): 32-34, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2730062/

attributed her sobriety to the effectiveness of Abilify. (*Id.* at 1681.) On November 28, 2007, Chytracek told Dr. Ogden that she strained her back after taking a turkey out of the oven. (*Id.* at 1682-83.) Dr. Ogden noted that Chytracek exercised every day and did not have any weakness in her leg. (*Id.* at 1683.) He diagnosed back strain and recommended conservative treatment. (*Id.*)

Chytracek saw Dr. Trinidad again in December 2007. (*Id.* at 1668.) Dr. Trinidad's handwritten notes are very difficult to read but the phrases "SS process," "physical demands," and "unable to cope" are legible. (*Id.*) Under the heading "Treatment Plan," he wrote "complete SSI form." (*Id.*) Dr. Trinidad checked boxes on his treatment record to note that Chytracek endorsed symptoms of sad/depressed mood, loss of enjoyment/interest, hopeless/helpless/worthless, and panic attacks. (*Id.*)

Dr. Trinidad completed the form "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" regarding Chytracek on December 4, 2007. (*Id.* at 1646-49.) In describing Chytracek's ability to do ten work-related mental activities, Dr. Trinidad checked the box for "marked" difficulties, defined on the form as "serious limitation," in seven out of ten activities. (*Id.* at 1646-47.) He checked the box for "moderate" difficulties in the remaining activities: understanding, remembering, and carrying out simple instructions; and interacting appropriately with coworkers. (*Id.*) Dr. Trinidad opined that Chytracek's symptoms fluctuated as a result of bipolar disorder and "CD history," and that stress exacerbated her symptoms. (*Id.* at 1647.) Although he believed that alcoholism contributed to Chytracek's limitations, he would not change his opinion of her limitations if she was totally abstinent from alcohol because she was "currently making efforts at sobriety [with] medication/therapy mgmt." (*Id.*)

In February 2008, Dr. Trinidad noted Chytracek was denied SSI. (*Id.* at 1667.) Chytracek endorsed symptoms of sleep disturbance and anxiety. (*Id.*) On mental status examination, Dr. Trinidad described Chytracek's attention, concentration and memory as "fair." (*Id.*) His notes regarding Chytracek's mood and affect are illegible. (*Id.*) Dr. Trinidad increased Chytracek's Trazadone and Celexa. (*Id.*) In September 2008, Chytracek was anxious, but Dr. Trinidad described her mood as good. (*Id.* at 1665-66.) She did not see Dr. Trinidad again until May 26, 2009. (*Id.* at 1665.) Chytracek expressed anxiety but Dr. Trinidad described her mood as great. (*Id.*) Earlier that month, Dr. Trinidad wrote a letter for Chytracek, opining that she had been sober for two years, and her mood had stabilized with treatment for bipolar affective disorder and alcohol dependence. (*Id.* at 1674.) In June 2009, Chytracek told Dr. Ogden she felt great other than some ear pain. (*Id.* at 1686-87.)

On February 4, 2010, Dr. Ogden completed a Lumbar Spine Residual Functional Capacity Questionnaire regarding Chytracek. (*Id.* at 1705-09.) He noted that he had treated Chytracek quarterly for nearly twenty years. (*Id.* at 1705.) Her diagnoses were chronic back pain, bipolar, and alcoholism in remission. (*Id.*) Emotional factors contributed to her pain. (*Id.* at 1606.) Dr. Ogden opined that Chytracek was limited to the following: walking eight blocks, sitting for two hours at a time, standing for two hours at a time, needs to walk every ninety minutes, shift position from sitting, standing or walking at will, take fifteen minute breaks every ninety minutes, frequently lift less than ten pounds, occasionally lift ten pounds; rarely twist, stoop, crouch, and climb ladders or stairs. (*Id.* at 1706-07.) Dr. Ogden wrote, "[a]s long as her work is kept at 15 hours/week, she does not have overwhelming anxiety or thoughts of breaking her sobriety." (*Id.* at 1708.) On October 19, 2011, Dr. Ogden affirmed that his opinions of Chytracek's work limitations remained the same. (*Id.* at 1709.)

## D. State Agency Physician Opinions

On August 28, 2007, two months after Chytracek's sobriety date, Dr. P.E. Shields reviewed Chytracek's social security disability file for an initial determination on her social security disability application. (*Id.* at 1609-25.) Dr. Shields opined that Chytracek met Listing 12.09 for substance use disorders in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 1612.) He did note though that she was much improved when sober and on medication. (*Id.* at 1624.) Dr. Shields completed a Mental Residual Functional Capacity Assessment. (*Id.* at 1626-29.) He opined that when Chytracek was sober, she could concentrate on, understand, remember and carry out routine, repetitive, 3-4 step instructions and tasks, get along with coworkers limited to brief, infrequent and superficial contact; she would have no limitations interacting with the public; adequate ability to function with an ordinary level of supervision; and she could tolerate the routine stress of a routine, repetitive work setting. (*Id.* at 1628.)

The SSA also asked Dr. Cliff Phibbs to review Chytracek's medical records and complete a Physical Residual Functional Capacity Assessment form. (*Id.* at 1638-44.) On September 17, 2007, Dr. Phibbs opined that Chytracek could occasionally lift and carry fifty pounds, frequently lift and carry 25 pounds, stand/walk 6 hours in eight-hour day, and sit six hours in eight-hour day. (*Id.* at 1638.) She should be limited to never climbing ladders, ropes or scaffolds; occasionally climbing ramps or stairs; occasionally stooping and crouching; and frequently balancing, kneeling and crawling. (*Id.* at 1644.)

Dr. George Salmi reviewed Chytracek's social security disability file upon reconsideration of Chytracek's disability application on January 7, 2008. (*Id.* at 1653-55.) Dr. Salmi affirmed Dr. Phibbs' physical RFC opinion. (*Id.*) That same day, Dr. R. Owen Nelson affirmed Dr. Shields' mental RFC opinion. (*Id.* at 1656-58.) On July 6, 2009, the SSA asked

Dr. Dan Larson to review Chytracek's social security file.  (*Id.* at 1700-02.)  Dr. Larson affirmed Dr. Shields' August 28, 2007 mental RFC opinion.  (*Id.*)

### E.     Evidence from the Vocational Expert

William Rutenbeck testified at the hearing as a vocational expert; Chytracek's counsel had no objection to his qualifications.  (*Id.* at 46.)  The ALJ asked Rutenbeck to consider a woman who was closely approaching advanced age, had a high school education, and work history as described in the vocational report.[5]  (*Id.* at 47).  The individual had discectomies in 1997 and 2002, back strain, hypertension, bipolar disorder and alcoholism in remission.  (*Id.*) The ALJ told Rutenbeck to assume the individual had a medium exertional capacity, could lift up to fifty pounds occasionally and 25 pounds frequently; walk or stand six hours in an eight-hour day, and sit for two hours per day, with no more than occasional bending, twisting, kneeling, crouching, crawling or climbing.  (*Id.*)  Due to mental impairments, the individual would also be limited to repetitive simple work that did not involve more than brief and superficial contact with others and was low stress, defined as not rapidly paced.  (*Id.* at 47-48.)

Rutenbeck testified such a person could not perform Chytracek's past relevant work but could perform jobs such as dining room attendant[6] and vehicle cleaner.[7]  (*Id.* at 48.)  These jobs would be precluded by a restriction to sedentary work, but they would not be precluded by limited concentration, persistence or pace.  (*Id.* at 49-50.)

### F.     The ALJ's Decision

On December 9, 2011, the ALJ issued an unfavorable decision.  (*Id.* at 12-32.)  In finding that Chytracek was not disabled, the ALJ employed the required five-step evaluation

---

[5] Chytracek worked as a waitress at a light exertional level, and a deli cook at a light exertional level.  (Admin. R. at 360.)
[6] DOT Code 311.677-018, with 2,700 such jobs in Minnesota.
[7] DOT Code 919.687-014, with 6,900 such jobs in Minnesota.

considering: (1) whether Chytracek was engaged in substantial gainful activity; (2) whether Chytracek had severe impairments; (3) whether Chytracek had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether based on Chytracek's residual functional capacity, she could perform her past relevant work; and, if not, (5) whether there is other work that exists in significant numbers in the national economy that she could perform. *See* 20 C.F.R. § 404.1520(a)(4).

At the first step of the evaluation, the ALJ found Chytracek had not engaged in substantial gainful activity during the period from her alleged onset date of June 13, 2007 through her date last insured of June 20, 2009. (*Id.* at 17) (citing 20 C.F.R. §§ 404.1571 *et seq.*). At the second step, the ALJ found that Chytracek had severe impairments of past discectomies and back strain, bipolar disorder, and alcoholism in remission. (*Id.*) (citing 20 C.F.R. § 404.1520(c)).

At step three, the ALJ concluded Chytracek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*) (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). In explanation, the ALJ stated the record evidence did not establish Listing 1.04, disorders of the spine, in the absence of compromise of a nerve root with additional findings. (*Id.* at 18.) Furthermore, the severity of her mental impairments did not meet or equal the severity in Listing 12.04(b) because Chytracek was only mildly impaired in activities of daily living, moderately impaired in social functioning, and moderately limited in concentration, persistence or pace, with no episodes of decompensation of extended duration. (*Id.* at 18-19.)

At step four of the evaluation, the ALJ determined Chytracek had the residual functional capacity to:

> perform medium work, defined in 20 CFR 404.1567(c) as lifting and carrying 50 pounds occasionally, and 25 pounds frequently; standing and/or walking 6 hours of an 8 hour day, and sitting 6 hours of an 8 hour day, no more than occasional bending, twisting, stooping, kneeling, crouching, crawling or climbing, which is routine, repetitive, simple work, not requiring more than brief and superficial contacts with others, and low stress, defined as not rapidly paced.

(*Id.* at 19.) The only reference to back pain in the relevant medical records is when Chytracek strained her back taking a turkey out of the oven, and Dr. Ogden recommended conservative care. (*Id.* at 21.) After being sober for two years, Chytracek felt great. (*Id.*) The ALJ did not afford any weight to Dr. Ogden's physical RFC opinion because it was not supported by his treatment notes, nor did she afford any weight to Dr. Ogden's fifteen-hour per week restriction because he did not provide any objective basis for his conclusion. (*Id.* at 22.) The ALJ afforded some weight to the state agency physician's opinion in Exhibit 21F,[8] but she did not include all postural limitations in her RFC finding because they were not supported by medical findings. (*Id.*)

The ALJ found Chytracek credible in that she would experience increased symptoms with exposure to "complex, highly stressful work," but did not find support in the record for any greater mental restrictions. (*Id.* at 22.) The ALJ reviewed Dr. Trinidad's treatment records, and concluded they did not support his disability opinion because Chytracek had relatively normal mental status examinations and a stable mood. (*Id.* at 22-23.) The ALJ afforded some weight to

---

[8] Exhibit 21F from the administrative hearing is the September 17, 2007 Physical RFC Assessment by Dr. Phibbs. (Index at 4, [Doc. No. 5-1]; Admin. R. at 1637-44.)

the state agency physician's opinions in Exhibits 17F and 18F[9] because they were based on a complete review of the medical records for the relevant time period and on specialized knowledge of the social security standards for disability. (*Id.*) The ALJ did not adopt the opinion in Exhibit 17F because it was made while alcoholism was an active problem, and he adjusted the RFC to account for Chytracek's functioning when sober. (*Id.*) The ALJ noted that Chytracek's daily activities were consistent with her RFC finding because Chytracek performed 75% of the household cooking, the majority of the cleaning, grocery shopped with her husband, did laundry, attended church, taught a church class to four-year-olds once a week, and attended revival meetings three times a week. (*Id.*)

The ALJ found Chytracek could not perform any past relevant work through the date last insured. (*Id.* at 23) (citing 20 C.F.R. § 404.1565). Based on the vocational expert's testimony, at step five the ALJ found Chytracek would be able to perform other jobs that exist in significant numbers in the national economy such as dining room attendant and vehicle cleaner. (*Id.* at 23-24) (citing 20 C.F.R. §§ 404.1569, 404.1569(a)). Therefore, Chytracek was not under a disability, as defined in the Social Security Act, from June 13, 2007 through June 30, 2009, the date last insured. (*Id.* at 24) (citing 20 C.F.R. § 404.1520(g)).

## II.    STANDARD OF REVIEW

The standards governing the award of Social Security disability benefits are congressionally mandated: "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992). "Disability" under the Social Security Act is defined as the "inability

---

[9] Exhibits 17F and 18F from the administrative hearing, respectively, are the Psychiatric Review Technique Form and the Mental RFC Assessment completed by Dr. Shields on August 28, 2007. (Index at 3; Admin. R. at 1612-29.)

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To be entitled to disability benefits, an individual must be disabled independent of drug addiction or alcoholism. 20 C.F.R. § 404.1535(b)(i).

### A. Administrative Review

If a claimant's initial application for benefits is denied, he may request reconsideration of the decision. 20 C.F.R. § 404.909(a)(1). A claimant who is dissatisfied with the reconsidered decision may seek an ALJ's administrative review. 20 C.F.R. § 404.929. If the claimant is dissatisfied with the ALJ's decision, the claimant may seek Appeals Council review, although that review is not automatic. 20 C.F.R. §§ 404.967–982. If the request for review is denied, then the ALJ's decision is final and binding upon the claimant unless the matter is appealed to a federal district court. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. An appeal to a federal court of either the Appeals Council or the ALJ's decision must occur within sixty days after notice of the Appeals Council's action. *Id.*

### B. Judicial Review

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). This Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'" *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (citation and internal quotation marks omitted)). A court's task is limited to reviewing "the

record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.*

The "substantial evidence in the record as a whole" standard does not require a preponderance of the evidence but rather only "enough so that a reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Yet, this Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). Thus, a "notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989) (internal citation omitted).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* (internal citation omitted).

In reviewing the ALJ's decision, this Court analyzes the following factors: (1) the ALJ's findings regarding credibility; (2) the claimant's education, background, work history, and age; (3) the medical evidence provided by the claimant's treating and consulting physicians; (4) the claimant's subjective complaints of pain and description of physical activity and impairment; (5) third parties' corroboration of the claimant's physical impairment; and (6) the VE's testimony based on proper hypothetical questions that fairly set forth the claimant's impairments. *Brand v. Sec'y of the Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980). Proof of disability is the claimant's burden. 20 C.F.R. § 404.1512(a). Thus, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of

production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Reversal is not appropriate "merely because the evidence is capable of supporting the opposite conclusion." *Hensley*, 352 F.3d at 355. If substantial evidence on record as a whole permits one to draw two inconsistent positions and one of those represents the Commissioner's findings, then the Commissioner's decision should be affirmed. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court's task "is not to reweigh the evidence, and [the Court] may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

## III. DISCUSSION

Chytracek alleges the ALJ committed four errors: 1) the ALJ erred by not accepting the treating physician's opinion and by granting more weight to nonexamining physicians' opinions; 2) the ALJ erred by finding the record as a whole did not support Dr. Ogden's and Dr. Trinidad's opinions; 3) the evidence indicates Chytracek could not work at any job on a regular and continuing basis since her onset date; and 4) the ALJ drew improper inferences from the record. (Pl's Mem. in Supp. of Mot. for Summ. J. at 8-12 ("Pl's Mem.")) [Doc. No. 7].

### A. Weight Given to the Medical Opinions

A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). An opinion that a claimant is disabled or "unable to work," however, is not the type of opinion that the Commissioner gives controlling weight

because that issue is reserved for the Commissioner. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). The ALJ may give a treating physician's opinion less weight when the "the opinion conflicts with other substantial medical evidence contained within the record." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (quoting *Prosch*, 201 F.3d at 1013-14). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician's when such other assessments are supported by better or more thorough medical evidence." *Id.* (quoting *Prosch*, 201 F.3d at 1014 (internal quotations and citations omitted)).

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(ii). The factors an ALJ must consider in weighing the medical opinions include length, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the source. *Id.* at § 404.1527(c)(2)(1-6).

Chytracek asserts Dr. Ogden's treatment notes and the medical records of her hospitalizations support Dr. Ogden's opinion that she is restricted to less than sedentary work for no more than fifteen hours per week. (Pl's Mem. at 8-9.) She contends it was reversible error for the ALJ to credit Dr. Phibbs' opinion over Dr. Ogden's opinion because nonexamining physician's opinions ordinarily do not constitute substantial evidence on the record as a whole. (*Id.* at 9.) Chytracek argues Dr. Ogden's opinion should have been controlling because Dr. Ogden treated her for twenty years and was an internal medicine specialist. (*Id.*) She further

asserts Dr. Trinidad's records of her anxiety support Dr. Ogden's opinion of her part-time work restriction. (*Id.* at 9-10.)

The Commissioner disagrees, contending that Dr. Odgen's opinion of Chytracek's physical work restrictions is in stark contrast to his treatment notes during the relevant timeframe. (Def's Mem. in Supp. of Mot. for Summ. J. at 14 ("Def's Mem.") [Doc. No. 10]. Chytracek only exacerbated her back pain once, Dr. Ogden did not prescribe any specific treatment, and Chytracek did not complain of back pain again. (*Id.* at 14-15.) Additionally, Chytracek's back pain improved quickly after her two surgeries, and her surgeon thought she might have back pain from time to time in the future, but doubted it would be severe. (*Id.* at 16.) Chytracek only complained of back pain once over the course of several years, and she was treated conservatively. (*Id.* at 16.17.) Dr. Ogden's opinion that Chytracek can only work part-time is unsupported by anything in his treatment records, and it is an issue reserved to the Commissioner. (*Id.* at 17-18.)

The Commissioner also asserts Dr. Trinidad's opinion is inconsistent with his own treatment notes. (*Id.* at 18.) Chytracek only complained of mania once, a week after her last drink of alcohol. (*Id.*) Once she started Abilify, she improved, although still reporting anxiety on occasion. (*Id.* at 19.) In May 2009, Dr. Trinidad confirmed that treatment had been successful in stabilizing Chytracek's mood and maintenance of sobriety. (*Id.*) Most of Chytracek's mental status examinations were normal. (*Id.* at 20.)

In reply, Chytracek argues Dr. Phibbs's opinion should not be credited because he reviewed the record before she exacerbated her back pain. (Pl's Reply Mem. in Resp. to Def's Mot. for Summ. J. at 5 ("Reply") [Doc. No. 11]. Chytracek also contends the fact that her mood stabilized and her alcohol dependence was in remission does not contradict Dr. Trinidad's

opinion that she still had a severe underlying bipolar impairment. (*Id.* at 6-7.) Chytracek asserts both treating physicians believed her anxiety precluded her from working full-time. (*Id.* at 8.)

This Court finds that the record supports the ALJ's decision to grant more weight to Dr. Phibbs's physical RFC opinion because Dr. Ogden's opinion is inconsistent with the record as a whole. It is true that Dr. Ogden treated Chytracek over the course of many years, but the medical evidence does not substantiate his RFC opinion. By 2007 Chytracek had recovered from her back surgeries, she had only one back strain during the two-year relevant time period, and there is no evidence of any pain medication being prescribed or any type of physical therapy at that time. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (ALJ properly discounted allegation of disabling back pain where claimant did not pursue regular treatment or medication).

Shortly after Chytracek's 2002 back surgery, her only restriction was no heavy lifting, heavy bending or twisting. She was not given any other restrictions when she later strained her back. *See Teague v. Astrue*, 638 F.3d 611, 615-16 (8th Cir. 2011) (discounting treating physician's opinion was proper where physician's treatment notes did not contain any significant limitations or inability to work.) There simply is no objective evidence or explanation supporting Dr. Ogden's ten pound lifting restriction, requirement for breaks and change of positions at ninety minute intervals, or to rarely twist, stoop, crouch, climb ladders or stairs. Chytracek's testimony of her fairly active lifestyle is also inconsistent with Dr. Ogden's opinion. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (shopping, cooking, attending church, attending class part-time, exercising and visiting others was inconsistent with disabling pain.) An ALJ can grant more weight to a nonexamining physician's opinion when it is consistent with the record as a whole, and the treating physician's opinion is not. *See e.g. Cruze v. Chater*, 85

F.3d 1320, 1325-26 (8th Cir. 1996) (ALJ's RFC assessment was properly supported by opinions of two consulting physicians and claimant's daily activities, and only contradicted by inconsistent statements of a treating physician and claimant's own subjective assessment.)

The other part of Dr. Ogden's opinion, that Chytracek is limited to working fifteen hours per week, is similarly unsupported. Dr. Ogden stated, "[a]s long as her work is kept at 15 hours/week, she does not have overwhelming anxiety or thoughts of breaking her sobriety." (*Id.* at 1708.) As soon as the medication Abilify reduced her manic episodes and cravings for alcohol, Chytracek told Dr. Trinidad she was looking for volunteer work and a job. He did not recommend that she limit her work to part-time, nor did Dr. Ogden.

Chytracek's only episodes of worsening depression or anxiety after starting Abilify were related to her concerns regarding her application for social security benefits. *See Tindall v. Barnhart*, 444 F.3d 1002, 1006-07 (8th Cir. 2006) (situational depression was not disabling). Dr. Trinidad's mental status examinations indicated that Chytracek's attention, concentration and memory were fair; and her mood was sometimes anxious, but other times her mood was good. Dr. Trinidad's May 2009 statement that Chytracek had stabilized her mood and maintained sobriety is an accurate description of the record and does not suggest she would be limited to part-time work. Thus, substantial evidence in the record supports the ALJ's decision to grant more weight to Dr. Shields's mental RFC opinion over Dr. Ogden's part-time work restriction, and over Dr. Trinidad's opinion that Chytracek would have marked limitations in most mental work-related activities. Moreover, Dr. Trinidad's opinion that Chytracek would have only moderate difficulties in understanding, remembering and carrying out simple work instructions and tasks, and interacting appropriately with coworkers is consistent with Dr. Shields's mental

RFC opinion that Chytracek was capable of simple, routine, repetitive work with limited contact with others.

Finally, restricting Chytracek to part-time work on the assumption that the stress of full-time work would cause her to lose her sobriety is inconsistent with Chytracek's testimony that Abilify was effective in treating the symptoms that caused her to drink. Furthermore, if Chytracek's part-time work restriction is based on the premise that she would not remain sober if she worked full-time, then it seems inescapable that alcoholism would be a material factor contributing to her disability, and benefits would not be awarded. 20 C.F.R. § 404.1535(b)(2). This is consistent with Dr. Shields's opinion that Chytracek was disabled when alcoholism was considered. Thus, the Court concludes the ALJ properly weighed the medical opinions. The weight given to the medical opinions is only one factor of the ALJ's RFC determination. Chytracek contends a nonexamining physician's opinion alone is not substantial evidence supporting an RFC determination.

### B.    RFC and Credibility

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a). In determining a claimant's RFC, the ALJ must consider all relevant evidence and evaluate the claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

> Although the ALJ 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), we have also stated that a "claimant's residual functional capacity is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). "[S]ome medical evidence, " *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace[.]" *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). In evaluating the claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least

some supporting evidence from a professional. *See* 20 CFR § 404.1545(c); *Baldwin* [*v. Barnhart*], 349 F.3d [549], 556 [8th Cir. 2003] (internal citations omitted).

*Masterson v. Barnhart*, 363 F.3d 731, 737-38 (8th Cir. 2004). "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004)).

An ALJ may not discount a claimant's subjective complaints based solely on lack of objective findings to explain the severity of the symptoms. *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). An ALJ may, however, discount subjective complaints if they are "inconsistent with the evidence as a whole." (*Id.*) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)) (internal quotation omitted)). In assessing credibility, the ALJ should consider factors including prior work record; observations by physicians and other third parties; the claimant's daily activities; the duration, frequency and intensity of the symptoms; the claimant's treatment, its effectiveness, and side effects; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.3d 1320, 1322 (8th Cir. 1984). Courts should not disturb the ALJ's credibility decision if the ALJ discredits the claimant's subjective complaints for "good cause." *Goff*, 421 F.3d at 792 (quoting *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001)).

Chytracek asserts a nonexamining physician's opinion does not constitute substantial evidence upon which the ALJ can base an RFC assessment. (Pl's Mem. at 11-12.) The Commissioner responded that although a nonexamining physician's opinion alone is not enough to support an ALJ's RFC assessment, an ALJ may rely on a nonexamining physician's opinion in addition to other objective medical evidence and factors such as the claimant's daily activities,

when they are consistent with the record as a whole and the treating physician's opinion is not. (Def's Mem. at 21-22.)  The Commissioner further contends Chytracek's testimony about her mental limitations is not credible based on Dr. Trinidad's treatment records of her mostly normal mental status examinations, and her own testimony about her social functioning.  (Def's Mem. at 24-25.)

The ALJ's physical RFC assessment is supported by medical evidence in the record.  The ALJ cited Chytracek's emergency room treatment in September 2008, where she demonstrated normal ranges of motion and no deformity of thoracic, lumbar or sacral spine tenderness. (Admin. R. at 21.)  When Chytracek strained her back taking a turkey out of the oven, her leg strength and reflexes were normal.  (*Id.*)  The next month, Chytracek told Dr. Ogden she had improved her walking distance.  (*Id.*)  In June 2009, Chytracek told Dr. Ogden she felt great other than some ear pain.  (*Id.*)  Furthermore, the ALJ properly discounted the severity of Chytracek's subjective complaints of back pain based on her lack of regular treatment or medication for her back, and inconsistency with her daily activities.

In determining Chytracek's mental residual functional capacity, the ALJ relied on more than Dr. Shields's opinion, which she gave only "some weight."  (*Id.* at 23.)  The ALJ formed her mental RFC opinion in part based on Dr. Trinidad's treatment notes, the only medical evidence in the record of Chytracek's mental functioning during the relevant time period.  The ALJ noted Chytracek improved with Abilify, and she was able to increase her activities, despite some continuing anxiety.  (*Id.*)  Chytracek did not seek any mental health treatment between September 2008 and May 2009.  (*Id.*)  In May 2009, Chytracek told Dr. Trinidad all of her symptoms had improved.  (*Id.*)  Thus, the ALJ properly concluded that Dr. Trinidad's treatment notes were consistent with Dr. Shields's RFC opinion in Exhibit 18F.  *See Krogmeier v.*

*Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (affirming ALJ's decision where ALJ "did not rely solely on the opinion of the consulting physician, but also conducted an independent review of the medical evidence.")

The ALJ also found that Chytracek's daily activities of church attendance and participation in revival meetings showed she had the ability to engage in interpersonal contacts and concentrate and persist in tasks. (*Id.* at 23.) Based on her volunteer teaching job, she could manage a degree of stress and responsibility. (*Id.*) Therefore, the ALJ's mental RFC determination was based on objective medical evidence and on Chytracek's daily activities. *See Krogmeier*, 294 F.3d at 1024 (substantial evidence in the record including medical records, contemporaneous physician's opinion, consulting physician's opinion, apparent lack of motivation to work, and daily activities supported ALJ's decision). Under these circumstances, the ALJ's decision should be affirmed.

## IV.     RECOMMENDATION

Based on all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff Chytracek's Motion for Summary Judgment [Doc. No. 6] be **DENIED**;

2.     Defendant Commissioner's Motion for Summary Judgment [Doc. No. 9] be **GRANTED**;

3.     If this Report and Recommendation is adopted, judgment be entered.

Dated:  April 12, 2013                              *s/Steven E. Rau*
                                                      Steven E. Rau
                                                      U.S. Magistrate Judge

Under D.Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 29, 2013**, a writing which specifically identifies those portions of the Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting

party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.